## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Eileen Devney, trustee for the next-of-
kin of Jacquelynn Devney, decedent,

Civil No. 10-3141 (SRN/FLN)

Plaintiff,

**MEMORANDUM OPINION
AND ORDER**

v.

United States of America,

Defendant.

---

Paul A. Sortland, Sortland Law Office, 431 South Seventh Street, Suite 2440, Minneapolis, MN 55415, for Plaintiff.

Friedrich A. P. Siekert, Assistant United States Attorney, and B. Todd Jones, United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Defendant.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's motion to dismiss or for summary judgment (Doc. No. 13).  For the reasons stated below, this Court grants the motion insofar as it seeks summary judgment.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On July 27, 2006, Laura Brockhaus, a federal employee, fell asleep at the wheel of her vehicle while driving home from her job as a nurse at the Veteran's Administration Medical Center in Minneapolis, Minnesota.  When Brockhaus veered off the road, she struck and killed Jacquelynn Devney (decedent), who was working for the City of Farmington's Park and Recreation Department.

Plaintiff Eileen Devney, the trustee for the next-of-kin of decedent, filed this action alleging that the United States of America is liable for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  Devney claims that Brockhaus' employer, the Veteran's Administration ("VA"), negligently scheduled Brockhaus to work an excessive number of hours–in violation of the VA's own scheduling policy–leading to her exhaustion and the accident that killed decedent.

The United States now moves to dismiss for lack of jurisdiction under the FTCA or, in the alternative, for summary judgment based on state tort law.

## II.    DISCUSSION

Plaintiff's Complaint asserts two claims:  (1) a claim for negligence (Count I); and (2) a claim for wrongful death (Count II).  (Doc. No. 1.)[1]  Defendant now seeks dismissal, contending that this Court lacks subject matter jurisdiction because the claims are not within the United States' limited waiver of sovereign immunity under the FTCA.  In the alternative, Defendant seeks summary judgment, contending that even if the Complaint is cognizable under the FTCA, the United States is entitled to judgment as a matter of law because, under Minnesota law, it either owed decedent no duty or that its actions were not the proximate cause of her death.

---

[1]    Because decedent died immediately upon being struck by Brockhaus' vehicle, it would appear that Plaintiff, as trustee for decedent's next-of-kin, would have only a single claim for wrongful death, albeit one premised on negligence.  Minn. Stat. § 573.01 ("A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02."); id. § 573.02, subd. 1 (authorizing wrongful death action).  But because the dispositive issues do not turn on any possible distinction between a wrongful death claim and a separate negligence claim, the Court need not differentiate between the two alleged claims.

### A.    Dismissal and Summary Judgment Standards

On a motion to dismiss, the Court accepts as true the factual allegations of the Complaint and draws all reasonable inferences in Plaintiff's favor, but does not defer to any legal conclusions or formulaic recitations of the claims' elements.  Minneapolis Firefighter Relief Ass'n v. MEMC Electronic Materials, Inc., 641 F.3d 1023, 1027 (8th Cir. 2011).  Under Rule 12(b)(6), the Complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

On a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court is generally required to construe the facts in the light most favorable to Plaintiff and to draw all reasonable inferences in her favor.  E.g., Enterprise Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996)

### B.    The FTCA's Waiver of Sovereign Immunity And The Discretionary Function Exemption

The United States first requests dismissal on the grounds that Plaintiff's claim does not fall within the boundaries of permissible tort claims against the United States, such that this Court lacks subject-matter jurisdiction.

### 1.    Waiver of Sovereign Immunity

Generally, the FTCA imposes civil liability on the United States for negligence where a private defendant would be liable under the applicable state law.  The FTCA

provides, as relevant here, a limited waiver of the sovereign immunity of the United

States:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
> If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof.

28 U.S.C. § 2674.  The FTCA also grants this Court jurisdiction

> of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The Court first observes that although Brockhaus was not "acting within the scope

of [her] office or employment" when she was driving home and struck decedent, the

allegedly-negligent parties here–Brockhaus' supervisors–were acting within the scope of

their employment when they assigned Brockhaus her work schedule.  Plaintiff premises

Defendant's liability, with respect to each of the Complaint's two state-law claims, on the

allegation that Brockhaus' supervisors "required . . . Brockhaus to work hours in excess

of the Defendant's own regulatory limitations."  (Doc. No. 1, ¶ 24; accord id. ¶ 30

(alleging that Defendant's actions were "wrongful" "in scheduling . . . Brockhaus for

excessive hours, in excess of regulations, with a clear knowledge of the danger that this employee, deprived of sleep, would expose to the public"). The Complaint alleges that, pursuant to the VA's own Handbook, nurses such as Brockhaus generally may not be scheduled to work in excess of sixty hours in any given week. (Id. ¶ 15.)

The parties dispute whether Brockhaus was in fact scheduled to work in excess of the VA's stated limit and how an employee's hours of work should be calculated. (Doc. No. 15, at 3-4 ("Brockhaus actually worked no more than 56.75 hours in the seven day period from July 21 to July 27 inclusive."); Doc. No. 22, at 4-11 ("Defendant's calculations are simply wrong.").) On a motion to dismiss, however, this Court may not decide such issues, but rather must accept as true all of the well-pled factual allegations in the Complaint. United States v. Gaubert, 499 U.S. 315, 327 (1991); see Berkovitz, 486 U.S. 531, 547 (1988) (evaluating FTCA issue based on the allegations of the Complaint, and noting that plaintiffs "are not required to" prove "their factual allegations" on "a motion to dismiss").

Here, Plaintiff alleges that "[f]or the three days immediately preceding the incident," Brockhaus was scheduled to work and in fact worked "the same 12.5 hour shift, every day," with "less than twelve hours off-duty between each of the three overnight shifts," and that "[i]n the seven days leading up to the death," she "was scheduled to work . . . for 59.5 hours of work, and worked an additional 12.5 hours of overtime, for a total of 72 hours." (Doc. No. 1, ¶¶ 12, 13.) Plaintiff thus states a claim under Section 2674 that is within this Court's jurisdiction under Section 1346(b)(1).

Having first concluded that Plaintiff's claims are generally cognizable under the FTCA because they seek damages for the death of a person allegedly caused by the negligence of a federal employee acting within the scope of their employment, the Court must next decide whether those claims evade the discretionary function exception to the general waiver of immunity from liability.[2]

## 2.    The Discretionary Function Exception

Although the FTCA operates as a general waiver of sovereign immunity, it also includes numerous exceptions.  28 U.S.C. § 2680 (enumerating various exceptions).  The discretionary function exception provides that the United States shall not be liable on

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Id. § 2680(a).

The Supreme Court has fashioned a two-part test for evaluating whether particular claims are barred by this exception.  The exception applies, and thus precludes a claim of negligence, if (1) the allegedly-negligent conduct involves a discretionary act–that is, that the conduct "involves an element of judgment or choice"–and (2) that judgment or choice implicates public policy–that is, that the decision is "grounded in social, economic, and political policy."  Berkovitz v. United States, 486 U.S. 531, 536-37 (1988).  "In sum, the

---

[2]        The Court will defer addressing the United States' argument that Plaintiff's claim is not based on state law to the appropriate portion of the analysis.  See infra § II.C (addressing Plaintiff's claims for negligence and wrongful death).

discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment."  Id. at 537.

With respect to the first prong, the Supreme Court has explained that "[t]he exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'"  United States v. Gaubert, 499 U.S. 315, 322 (1991).  Moreover, "'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies."  Id.  Thus, the exception does not apply "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'"  Id.[3]

If, however, the challenged action involves such a judgment or choice, the Court turns to the second prong of the exception.  "[E]ven 'assuming the challenged conduct involves an element of judgment,' it remains to be decided 'whether that judgment is of

---

[3]       The Supreme Court further clarified that discretionary acts are not limited to "policymaking or planning functions."  Gaubert, 499 U.S. at 325.  In short, "[d]iscretionary conduct is not confined to the policy or planning level.  '[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.'"  Id.  Thus, there is no exclusion from the realm of discretionary functions for decisions at the "operational level," as such decisions may "also be based on policy."  Id. at 326 (further disavowing any "dichotomy between discretionary functions and operational activities").  And any argument "that the challenged actions fall outside the discretionary function exception because they involved the mere application of technical skills and business expertise" is "just another way of saying that the considerations involving the day-to-day management of a business concern . . . are so precisely formulated that decisions at the operational level never involve the exercise of discretion" for purposes of the exception, an argument the Supreme Court has rejected.  Id. at 331.  Accordingly, the fact that Brockhaus' schedule was set by her immediate supervisor in Minneapolis, rather than by, for example, the Secretary of Veterans Affairs, and the fact that setting the schedule may have constituted a seemingly routine task, does not preclude the supervisor's actions from falling within the exception.

the kind that the discretionary function exception was designed to shield.'"  Id. at 322-23.

"Because the purpose of the exception is to 'prevent judicial 'second-guessing' of

legislative and administrative decisions grounded in social, economic, and political policy

through the medium of an action in tort,' when properly construed, the exception

'protects only governmental actions and decisions based on considerations of public

policy.'"  Id. at 323.

Here, as in Gaubert, the Court "first inquire[s] whether the challenged actions were

discretionary, or whether they were instead controlled by mandatory statutes or

regulations."  Id. at 328.  In 2004, Congress enacted the "Department of Veterans Affairs

Health Care Personnel Enhancement Act of 2004."  Pub. L. 108-445, Dec. 3. 2004, 118

Stat. 2636.  Section 4 of the Act amended Chapter 74 of Title 38 by adding 38 U.S.C. §

7456A, entitled "Nurses: alternate work schedules."  Pub. L. 108-445, Sec. 4(a).  Section

4 also articulated a "Policy Against Certain Work Hours":

> (1) It is the sense of Congress to encourage the Secretary of Veterans
> Affairs to prevent work hours by nurses providing direct patient care in
> excess of 12 consecutive hours or in excess of 60 hours in any 7-day period,
> except in the case of nurses providing emergency care.
> (2) Not later than one year after the date of the enactment of this Act and
> every year thereafter for the next two years, the Secretary shall certify to
> Congress whether or not each Veterans Health Administration facility has
> in place, as of the date of such certification, a policy designed to prevent
> work hours by nurses providing direct patient care (other than nurses
> providing emergency care) in excess of 12 consecutive hours or in excess of
> 60 hours in any 7-day period.

Pub. L. 108-445, Sec. 4(b).

The United States contends that such a provision–one that merely expresses "a

8

'sense of Congress'" rather than imposing "a compulsory mandate"–"does not compel a specific course of conduct." (Doc. No. 15, at 12.) Although, as the United States observes, subsection (1) simply states that it is "the sense of Congress to encourage the Secretary of Veterans Affairs to prevent" nurses from working excessive hours, subsection (2) requires that "the Secretary shall certify to Congress whether or not each Veterans Health Administration facility has in place" a policy to prevent such practices. But the Court need not decide whether this type of congressional action imposes a binding requirement on the VA, because the VA then published a rule governing the issue.

Presumably in response to this Act, the Department of Veterans Affairs issued or amended its employee Handbook. With respect to "Hours of Duty," the VA Handbook provides, among many other things, the VA's "*mandatory* procedures on the establishment of duty schedules for employees" such as Brockhaus. (Doc. No. 19, Ex. 7, at II-1 (emphasis added).) Included in these procedures are a "Policy Against Certain Work Hours"–that is, that, subject to an emergency exception not applicable here, "[r]egistered nurses on any work schedule shall not provide direct patient care in excess of 12 consecutive hours or in excess of 60 hours in any 7-day period." (Id. at II-42d.)

Nevertheless, the United States argues that this provision is not mandatory because "the so-called directive's language must not only be couched in mandatory terms, the so-called directive must also set forth a specific course of conduct to be followed." (Doc. No. 25, at 3 (citing Gaubert, 499 U.S. at 322); id. at 6 (contending that "the directive must

also tell the federal worker exactly how to do it").)  But the United States thus mistakenly

assumes that the regulation at issue here is one that "mandates particular conduct," such

that if "the employee obeys the direction, the Government will be protected because the

action will be deemed in furtherance of the policies which led to the promulgation of the

regulation." Gaubert, 499 U.S. at 324.  In Gaubert, however, "[n]ot only was there no

statutory or regulatory mandate which compelled the regulators to act in a particular way,

but there was no prohibition against the use of supervisory mechanisms not specifically

set forth in statute or regulation." Id. at 330.  "The agencies [t]here were not bound to act

in a particular way." Id. at 329.

Here, in contrast, the regulation at issue does not mandate particular conduct, but

prohibits certain conduct, that is, the scheduling of VA nurses to work in excess of sixty

hours per week.  And the sole basis of both of Plaintiff's claims is that Brockhaus'

supervisor exceeded that limit.  (Doc. No. 1, ¶¶ 24 (alleging, in Count I, that "duty was

breached" by requiring Brockhaus "to work hours in excess of the Defendant's own

regulatory limitations"), 30 (alleging, in Count II, that "the wrongful actions of the

Defendant . . . in scheduling . . . Brockhaus for excessive hours, in excess of regulations"

caused decedent's death).)

Nonetheless, the United States argues at some length that the VA's scheduling of

nurses' workloads involves substantial discretion, and that the exercise of that discretion

implicates public policy.  (Doc. No. 15, at 10-13, 13-15; Doc. No. 25, at 5-6.)  Granted,

such scheduling apparently is not completely controlled by statute or regulation.  Thus, it

very well might be that a VA nurse's supervisor exercises some discretion when scheduling shifts.  Likewise, the VA's initial decision to impose a limit on the number of hours a nurse may work during a week is arguably discretionary (although a choice "encourage[d]" by Congress) and a decision that might involve considerations of public policy, namely the quality of care nurses should provide to veterans.  Thus, the decision to impose a limit, and what precisely that limit should be, are likely immune from suit. See Gaubert, 499 U.S. at 323 ("Where Congress has delegated the authority to an independent agency . . . to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs.").

But here, Plaintiff is not challenging such decisions.  Plaintiff does not question the VA's (or Congress') judgment either generally in adopting (or encouraging) policies governing the work schedules of VA nurses, or specifically in adopting the particular rule limiting a nurse to sixty hours per week.  Rather, Plaintiff premises the liability of the United States solely on the fact that Brockhaus' supervisor violated that limit by scheduling her to work in excess of that fixed limit.  Cf. Aslakson v. United States, 790 F.2d 688, 693 (8th Cir. 1986) ("Aslakson's challenge to the governmental activity involved here goes not to the policy itself or to the manner in which WAPA chose to implement that policy. . . .  Rather, Aslakson claims WAPA officials were guilty of failing to comply with their own safety policy in the maintenance of their electrical

transmission lines).[4]

In <u>Gaubert</u>, the Supreme Court, after summarizing the applicable precedents regarding agency regulations, thus articulated the following framework for FTCA cases where the relevant agency has issued regulations:

(1) "[I]f a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation."  499 U.S. at 324.

(2) "If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."  <u>Id.</u>

(3) "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulation."  <u>Id.</u>

The <u>Gaubert</u> Court also observed that

[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish.  If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the

---

[4]      In effect, Plaintiff's claim is that the VA's limit of 60 hours per week constitutes a regulatory standard of care, such that assigning a workload in excess of that limit would constitute negligence *per se*.  <u>See infra</u> § II.C.

> exception would not apply. Although driving requires the constant exercise
> of discretion, the official's decisions in exercising that discretion can hardly
> be said to be grounded in regulatory policy.

Id. at 325 n.7.[5] Here, however, even assuming that driving to or from work was within

the scope of Brockhaus' employment, Plaintiff is not alleging that Brockhaus, as a federal

employee, was negligent in the operation of her vehicle.[6] The Complaint is confined to

the allegation that her supervisors were negligent in assigning her a workload–in excess

of the stated maximum–that left her so exhausted she fell asleep behind the wheel while

driving home after her shift was finished.[7]

Such allegations fit squarely within the second of the Supreme Court's framework

of three scenarios with respect to regulations–that is, Brockhaus' supervisors violated a

regulation limiting an employee's total weekly hours, such that there is no shelter from

liability. Id. at 324 ("If the employee violates the mandatory regulation, there will be no

shelter from liability because there is no room for choice and the action will be contrary

---

[5]     Plaintiff thus relies on the Supreme Court's statements that the United
States would be liable for "'ordinary common law torts [such as] 'negligence in the
operation of vehicles,'"" and that "[w]e know that the draftsmen did not intend [the
FTCA] to relieve the Government from liability for such common-law torts as an
automobile collision caused by the negligence of an employee [. . .] [sic] of the
administering agency. (Doc. No. 22, at 18-19 (quoting Dalehite v. United States, 346
U.S. 15, 28, 34 (1953)).)

[6]     Plaintiff apparently has settled a separate state-court action alleging that
Brockhaus herself was negligent. (Doc. No. 15, at 1.)

[7]     Nonetheless, there is a question here, addressed below with respect to
Minnesota tort law, whether a regulation apparently directed towards the quality of care
provided to veterans by VA nurses also reflects any duty to non-patients a nurse
encounters while driving to or from work. See infra § II.C.

to policy.").  Here, as in <u>Berkovitz</u>, the Complaint "is directed at a governmental action that allegedly involved no policy discretion."  486 U.S. 531, 547 (1988).  In <u>Berkovitz</u>, the Court held that the claim survived "the Government's motion to dismiss" because the discretionary function exception does not preclude claims that the federal agency at issue "adopted a policy of testing all vaccine lots for compliance with safety standards and preventing the distribution to the public of any lots that fail to comply, which allegedly leaves no room for implementing officials to exercise independent policy judgment," but that employees of that agency released a non-complying lot of vaccine.  <u>Id.</u>  Here, too, the Court discerns no discretion to violate the sixty hours per week rule.

The Court thus concludes, at least based on the Complaint and the standard governing a motion to dismiss, that the discretionary function exception does not preclude Plaintiff's action here.  Accordingly, the United States' motion, to the extent it seeks dismissal for lack of subject matter jurisdiction, is denied.

### C.    Minnesota Tort Law

The United States also requests, in the alternative, summary judgment on the grounds that Plaintiff's claim does not fall within the boundaries of permissible tort claims against the United States.  As noted above, the United States may be liable only to the extent a private defendant would be liable under the law of the state "where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Minnesota tort law therefore governs here. <u>E.g.</u>, <u>St. John v. United States</u>, 240 F.3d 671, 676 (8th Cir. 2001) (construing a FTCA claim according to "the law of the state where the tort occurred").

Under Minnesota law, "[t]o recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011).  Negligence, the breach of an applicable duty, "is generally defined as the failure 'to exercise such care as persons of ordinary prudence usually exercise under such circumstances.'"  Id.  The first question, however, is whether Brockhaus' supervisors owed any duty of care to the decedent.

The United States first argues that a federal employee's failures to follow the agency's own guidelines or polices "are not actionable under the FTCA" because "'[t]he violation of a federal statute or administrative regulation by an agency of the United States does not, standing alone, create a cause of action under the FTCA.'"  (Doc. No. 15, at 18 (quoting Klett v. Pim, 965 F.2d 587, 589 (8th Cir. 1992)).)  The Court has no quarrel with this principle, properly understood.

In Klett, the plaintiff claimed that federal agents and employees "negligently forced him out of farming by refusing an operating loan and refusing to release a grain elevator check," or, in other words, that "defendants negligently performed their statutory and regulatory duties when they refused to grant him a 1984 operating loan and demand that he make a voluntary conveyance of farm machinery in which the FmHA held a security interest."  965 F.2d at 588, 589.  In addressing this claim–which did not fit the parameters of any recognized Iowa tort claim–the court ruled that "there is no *general* cause of action under Iowa law for violating a statute or regulation."  Id. at 589 n.4

(emphasis added).

But the United States confuses a cause of action with the standard of negligence. Plaintiff's Complaint does not assert a claim for, for example, "Failure To Follow A Federal Regulation" or a claim for "Violation of a VA Rule." Unlike the plaintiff in Klett, Plaintiff is not asserting an unrecognized right to farm or to receive a loan. Rather, Plaintiff asserts conventional state-law claims for negligence and wrongful death. (Doc. No. 1, ¶¶ 22-31.) Thus, there is no question of the existence of a recognized cause of action under Minnesota law.

Such tort claims require a showing of negligence, that is, the breach of a duty of care. Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981) ("Negligence consists of 'a departure from a standard of conduct required by the law for the protection of others against unreasonable risk of harm.'"). Generally, whether a duty of care was breached is an issue for the jury under the reasonable person standard. Id. ("The standard for ordinary negligence is 'the traditional standard of the reasonable man of ordinary prudence.'"). But the standard of negligence for a state-law tort claim may be premised on a statute or regulation, in which case the claim is one for negligence *per se*, with the statutory or regulatory standard providing a more precise measure of breach than the conventional reasonable person standard. Gradejelick v. Hance, 646 N.W.2d 225, 231 n.3 (Minn. 2002) ("A per se negligence rule substitutes a statutory standard of care for the ordinary prudent person standard of care, such that the violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty

and breach."); <u>Aldermans' Inc. v. Shanks</u>, 536 N.W.2d 4, 8 (Minn. 1995) ("'The statute or ordinance imposes a fixed duty of care, so its breach constitutes conclusive evidence of negligence.'").

Moreover, a state-law negligence *per se* claim may be premised on a *federal* as well as a state statute or regulation. <u>Gray v. Badger Mining Corp.</u>, 676 N.W.2d 268, 275 (Minn. 2004) ("[W]e have held that the breach of a [federal] regulatory duty may be regarded as negligence per se."); <u>Engvall v. Soo Line R.R.</u>, 632 N.W.2d 560, 569 (Minn. 2001) ("We therefore find no merit in [defendant's] argument that a violation of the [federal Locomotive Inspection Act] on these facts cannot be used as the basis for a private negligence action brought under the common law."). Indeed, the claims in <u>Berkovitz</u> were state-law claims that federal employees violated the federal rules regarding the testing and release of vaccines. But such a claim remains one under state law and does not constitute a federal question. See <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804, 810-17 (1986) (holding that the fact that a state-law cause of action is premised on alleged violation of federal statute–"the presence of a federal issue in a state-created cause of action"–does not render the claim federal).[8]

A claim for negligence *per se* must satisfy a two-part test:

It is well settled that breach of a statute gives rise to negligence per se if the *persons harmed by that violation are within the intended protection of the statute* and the *harm suffered is one of the type the legislation was intended*

---

[8]    The Court need not, and does not, decide that violating the VA rule at issue here necessarily constitutes actionable negligence *per se*. Rather, even assuming such a violation could constitute negligence *per se* or some evidence of negligence, as discussed below Brockhaus' supervisors owed no duty to decedent.

*to prevent*.

Aldermans' Inc. v. Shanks, 536 N.W.2d 4, 7-8 (Minn. 1995) (quoting Pacific Indemnity

Co. v. Thompson-Yeager, Inc., 260 N.W.2d 548, 558-59 (Minn. 1977) (emphases in

Aldermans' Inc.)).[9]  Here, the VA rule prohibiting the scheduling of nurses to work more

than 60 hours per week is plainly intended to protect at least the patients at VA hospitals.

As the Handbook provides in the part regarding "Hours of Duty," "the proper care and

treatment of patients shall be the primary consideration in scheduling tours of duty under

these instructions."  (Doc. No. 19, Ex. 7, at II-1.)  The Court concludes, however, that the

rule at issue–insofar as it provides the standard of care in a negligence *per se* action–does

not extend so far as to include a duty to persons such as decedent.

For Plaintiff's claims to be viable, the VA must have owed a legal duty to

decedent.  Assuming, as Plaintiff alleges, that Brockhaus' supervisors assigned her a

work schedule that exceeded the VA's weekly limit, the issue of duty is dependent upon

whether those supervisors could reasonably anticipate that Brockhaus' schedule would

_____

[9]      These requirements for negligence per se essentially parallel the parameters
of a general negligence claim.  Under Minnesota law, "general negligence law imposes a
duty of reasonable care when the defendant's own conduct creates a foreseeable risk of
injury to a foreseeable plaintiff."  Domagala, 805 N.W.2d at 23.  Here, the question of
whether Brockhaus' supervisors owed any duty to the decedent is one of foreseeability.
"To determine whether risk of injury from the defendant's conduct is foreseeable we
'look at whether the specific danger was objectively reasonable to expect, not simply
whether it was within the realm of any conceivable possibility.'"  Id. at 26.  "If the
connection between the danger and the alleged negligent act 'is too remote to impose
liability as a matter of public policy, the court then holds there is no duty.'"  Id. at 27.
"The test is not whether the precise nature and manner of the plaintiff's injury was
foreseeable, but whether the 'possibility of an accident was clear to the person of ordinary
prudence.'"  Id.

leave her so exhausted that she would fall asleep at the wheel while driving home and strike a pedestrian such as decedent.  Although Plaintiff alleges that the VA's negligence resulted in the death of decedent, the decedent had no direct relationship with the VA or its employees.  An employer is generally not under a duty to control an employee who is acting outside the scope of her employment and is not on the employer's premises or using the employer's personal property:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>     (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>     (ii) is using a chattel of the master, and
>
> (b) the master
>     (i) knows or has reason to know that he has the ability to control his servant, and
>     (ii) knows or should know of the necessity and opportunity of exercising such control.

Restatement (Second) of Torts § 317.  Thus, Section 317 does not apply here.  Meany v. Newell, 367 N.W.2d 472, 476 (Minn. 1985) (rejecting application of Section 317 to a situation where the employee "was neither on the premises nor using the employer's chattels").

The Court concludes that such an accident is beyond the limit of foreseeability that defines the parameters of any applicable duty.  The risk at issue is too remote and attenuated from the allegedly-negligent conduct.

The three cases on which Plaintiff primarily relies, all from other jurisdictions, permitted or imposed liability on an employer for the injuries caused by an off-duty employee, but are each readily distinguishable.  In Robertson v. LeMaster, 301 S.E.2d 563 (W. Va. 1983), the court considered whether the employer of a motorist could be held liable to another motorist whose vehicle was struck by the employee's vehicle after the employee worked for over twenty-seven hours and then fell asleep behind the wheel.  The court held that the evidence presented a question for the jury as to whether the employer's conduct created a foreseeable risk of harm to others.  Id. at 569.  But in Robertson, the court relied on Section 321 of the Restatement (Second) of Torts.  The Minnesota Supreme Court recently ruled that it has "not adopted this provision of the Restatement and decline[s] to do so now."  Domagala, 805 N.W.2d at 25.

Similarly, in Otis Eng'g Corp. v. Clark, the court–over a vigorous dissent by four justices–held that an employer could be liable to two motorists struck by an employee driving home from work in an "extreme state of intoxication."  668 S.W.2d 307, 308 (Tex. 1984).  The employee "had a history of drinking on the job" and drank during his break the night of the accident.  Id.  A co-worker who "knew of Matheson's drinking problems" told their supervisor "on the day of the accident that Matheson was not acting right, was not coordinated, was slurring his words, and that 'we need to get him off the machines.'"  Id.  Another co-worker testified that Matheson "was either sick or drinking, was getting worse, 'his complexion was blue and like he was sick,' and that he was weaving and bobbing on his stool and about to fall into his machine."  Id.  The supervisor

thus sent the employee home early and escorted the employee to his vehicle.  <u>Id.</u>

Even so, the court stated that "[i]f a duty is to be imposed on [the employer] it would not be based on the *mere knowledge* of Matheson's intoxication, but would be based on additional factors."  <u>Id.</u> at 309 (emphasis in original).  The court, after reviewing three precedents including <u>LeMaster</u>, held that

> when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others.

<u>Id.</u> at 311.  The court relied in part on the principle of Section 319 of the Restatement, a provision addressing the duty of "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled."  <u>Id.</u> (quoting Restatement (Second) of Torts § 319).

Here, in contrast, not only was Brockhaus not intoxicated, but her employers apparently had no knowledge of her exhaustion, and, more importantly, did not terminate Brockhaus' shift early and escort her to her vehicle to drive home.  In short, no one at the VA hospital "took charge" of Brockhaus so as to assume a duty to prevent her from injuring others.

Finally, in <u>Faverty v. McDonald's Restaurants of Oregon</u>, 892 P.2d 703 (Or. App. 1995), the court–again over a vigorous dissent–ruled that an employer of a high school student could be liable to another whose vehicle was struck by the student as they drove home from work after an exceedingly long work-day.  The employer "was aware that at

least two of its employees had automobile accidents as a result of falling asleep while driving home after working late shifts." Id. at 517.  Although the employer usually did not assign high school students to the "special cleanup projects" it conducted after midnight a few times each year, the employee offered to work on the project.  After a week during which he worked five nights, the employee "worked his regular shift from 3:30 p.m. to 7:30 p.m., followed by the cleanup shift beginning at midnight and ending at about 5:00 a.m.  After the cleanup project was completed, [the employee] worked yet another shift from 5:00 a.m. to 8:21 a.m." Id. at 518.  The employee then told his manager that he was tired and asked to be excused from his next regularly scheduled shift.  "The manager knew that [the employee] drove approximately 20 miles to and from work." Id.  The court concluded that the question of foreseeability–whether an employer who witnessed a "visibly fatigued" employee could pose a risk to others while driving home–was one for the jury.

Here, in contrast, there is no allegation that anyone at the VA Hospital recognized that Brockhaus was too fatigued to drive home, or even that they knew she drove to and from work.  And Brockhaus herself did not ask to go home early due to fatigue.

In sum, the Court concludes that Brockhaus' supervisors at the VA did not, in scheduling Brockhaus' work week, owe any duty to third parties such as decedent.[10]

---

[10]      Having concluded that Defendant owed no duty to decedent, the Court need not and does not address the United States' remaining argument that any negligence on its part could not have been the proximate cause of decedent's death because Brockhaus' own intervening negligence was the superseding cause of decedent's death.

**III.   ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Defendant's motion [Doc. No. 13] is **GRANTED** insofar as it seeks

summary judgment under Minnesota tort law.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:   February 21, 2012                          ___ s/ Susan Richard Nelson ___
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge